# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL NARVELLE CHISOM,<br><br>        Petitioner,<br><br>    v.<br><br>WARDEN ATCHYLEY,<br><br>        Respondent. | Case No.: 1:21-cv-01768-JLT-SKO (HC)<br><br>FINDINGS AND RECOMMENDATIONS TO GRANT RESPONDENT'S MOTION TO DISMISS [Doc. 22]<br><br>[THIRTY-DAY OBJECTION PERIOD] |

Petitioner is a state prisoner proceeding *pro se* and *in forma pauperis* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.

On July 22, 1994, Petitioner was convicted by jury trial in the Madera County Superior Court of first degree murder, attempted murder, and attempted robbery. (Doc. 27-1.) The jury also found true the special circumstance allegation that the murder and attempted murder had been committed during the course of a robbery. (Doc. 27-1.) On October 3, 1994, Petitioner was sentenced to the aggravated term of nine years for the attempted murder and life without possibility of parole for the murder, to run consecutively. (Doc. 27-6.) Petitioner appealed to the California Court of Appeal, Fifth Appellate District. On September 11, 1996, judgment was affirmed. (Doc. 27-2.) Petitioner petitioned for review in the California Supreme Court. (Doc. 27-3.) On January 15, 1997, the petition was denied. (Doc. 27-4.)

Petitioner filed his federal petition in this Court on December 9, 2021.[1] (Doc. 1.) On July 28, 2022, Respondent filed a motion to dismiss contending that the petition violates the statute of limitations. (Doc. 22.) Thereafter, Petitioner made numerous filings. On August 8, 2022, he filed a motion to grant his petition and deny the motion to dismiss. (Doc. 23.) On August 10, 2022, he filed an opposition to the motion to dismiss. (Doc. 24.) On August 12, 2022, he filed a "reply" to the motion to dismiss. (Doc. 25.) On August 24, 2022, he filed a second motion to deny the motion to dismiss and to grant the petition. (Doc. 29.) On September 9, 2022, he filed a request for judicial notice. (Doc. 31.) Respondent filed a reply to the opposition on September 15, 2022. (Doc. 32.) On September 19, 2022, Petitioner filed another reply. (Doc. 33.) Upon review of the pleadings, the Court finds that the petition violates the statute of limitations. The Court will therefore recommend that Respondent's motion to dismiss be granted and the petition be dismissed with prejudice.

## FACTUAL BACKGROUND

The following factual history is taken from the opinion of the appellate court and is presumed correct[2]:

> In the early morning hours of September 26, 1993, defendant was in a car driven by Becky Goodmon, along with a group of people consisting of Tony, Cassandra Jones Jackson (Tony's girlfriend), her sister Leticia Jones, Patrice Conley, and Briana. They went to a party in Madera but were told to leave. The group left and drove toward Leticia and Cassandra's grandfather's house at 900 South A Street in Madera near McNally Park.
>
> When the group arrived near the park, another group, consisting of Hispanic males, Benito Ramirez, Dario DeLaPaz, Tomas Rodriguez, Antonio Mendez, and Sebastian Mesinis, were heading from a bar to their residence at 800 South A Street. According to Leticia, defendant told Tony in the car, "Let's go rob them." Tony replied, "Yeah, man" or "All right." Cassandra, who was sitting on Tony's lap in the front seat of the car while defendant was in back, heard no such conversation. The driver of the car, Becky Goodmon, did not recall why she stopped the car. Patrice Conley recalled that one of the males asked that the car be stopped, but did not recall why. Leticia testified Becky stopped the car because Tony and defendant wanted to get out to take a walk. Defendant also said, "there was[sic] too many Mexicans for them to get."
>
> Either Tony or defendant asked the women to distract the group of men, to which Cassandra relied, "[D]istract them from what?" Defendant and Tony got out of the car,

---

[1] Although the petition was received in this Court on December 15, 2021, the petition was dated December 9, 2021. Pursuant to the mailbox rule, a pro se habeas petition is deemed filed on the date of its submission to prison authorities for mailing, as opposed to the date of its receipt by the court clerk. Houston v. Lack, 487 U.S. 266, 276 (1988). Therefore, under the mailbox rule, the Court deems the petition filed on December 9, 2021, the date Petitioner presumably handed his petition to prison authorities for mailing.
[2] See 28 U.S.C § 2254(e).

2

walked up A Street, then turned back toward the car. Once back near the car, they yelled at the group of men stating, "Five dollars. Pinocha" which Leticia stated meant "pussy." After that the women were told by defendant and Tony to get out of the car and to start walking toward the group of men. The Hispanic men were near the home where they lived. The entire group ended up in the alley by the Hispanic males. The Hispanics began speaking with the women, believing they were prostitutes.

Leticia claimed defendant had at one point told Becky to start hitting one of the Hispanic men, which she did. Defendant then ran over to Becky and told her she was blowing his cover. Becky testified that no one had told her to get into a fight, but that she hit the man because he spit on her.

At this point, Tony was by the fence of the Hispanic males' home. Rosalyn Morris, who had not been with the others in the car, walked into the alley and took the wallet from the pocket of the man Becky had been hitting. Antonio Mendez testified that "[s]ome three or four" women attempted to reach into his pockets but took no money. However, Becky and Patrice denied participating in the robbery in any way and claimed the other women (aside from Rosalyn) were also not involved.

The man who had his wallet taken by Rosalyn yelled at Tony to have Rosalyn return it. Leticia testified defendant walked over by Tony who asked defendant for the gun, which defendant handed to Tony. Cassandra did not see anybody with a gun, and Becky saw Tony with the gun, but did not witness an exchange. Benito Ramirez testified the man with the gun (who subsequently shot him) had taken the gun out of his waistband.

Once Tony had the gun, he put it to Benito's head and stated, "Give me your mother fucken money." The man replied he did not have any money. Tony beat Benito on the head with the gun. Becky testified she saw Tony going through the Hispanic men's pockets and heard the word "dinero" being used. Benito refused to hand over the $10 he had, and along with several others, ran into the backyard of the residence. At the same time, defendant was struggling with Tomas, who testified defendant had a knife. While this was going on, Antonio was being held by one of the women and could not help Tomas.

All of the Hispanic males fled into the backyard, except for Tomas, who ran into the street. Defendant, Tony and Rosalyn followed them into the yard. Three gunshots were fired inside the backyard, although several witnesses testified to hearing two shots.

Defendant, Tony and Rosalyn came running out of the gate and Tony still had the gun in his hand. Leticia testified that defendant stated, "We shot the mother fuckers." After the shots were fired all the women ran down the alley towards Leticia and Cassandra's grandfather's house. Cassandra arrived at her grandfather's house, Patrice and Brianna were behind her, and Leticia and Becky arrived after them. Cassandra testified Tony arrived in Becky's car and defendant, who was also at the house, got into the car with him. Patrice did not recall defendant being at the house.

Corporal Randy Williams of the Madera Police Department testified he found two shooting victims lying on the ground in the backyard of 800 South A Street. Dario had been shot twice, once in the upper thigh and once in the left chest. That wound, a gaping two-inch hole in the left ventricle of his heart, was fatal. Benito was shot in the leg and could not get up.

(Doc. 27-2 at 3-5.)

**DISCUSSION**

I.       Procedural Grounds for Motion to Dismiss

Rule 4 of the Rules Governing Section 2254 Cases allows a district court to dismiss a petition if it "plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court . . . ." Rule 4 of the Rules Governing Section 2254 Cases.

The Ninth Circuit has allowed respondents to file a motion to dismiss in lieu of an answer if the motion attacks the pleadings for failing to exhaust state remedies or being in violation of the state's procedural rules. See, e.g., O'Bremski v. Maass, 915 F.2d 418, 420 (9th Cir. 1990) (using Rule 4 to evaluate motion to dismiss petition for failure to exhaust state remedies); White v. Lewis, 874 F.2d 599, 602-03 (9th Cir. 1989) (using Rule 4 as procedural grounds to review motion to dismiss for state procedural default).  Thus, a respondent can file a motion to dismiss after the court orders a response, and the court should use Rule 4 standards to review the motion.

Here, Respondent's motion to dismiss is based on a violation of 28 U.S.C. 2244(d)(1)'s one-year limitations period.  Because Respondent's motion to dismiss is similar in procedural standing to a motion to dismiss for failure to exhaust state remedies or for state procedural default and Respondent has not yet filed a formal answer, the Court will review Respondent's motion to dismiss pursuant to its authority under Rule 4.

II.      Limitations Period for Filing Petition for Writ of Habeas Corpus

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA).  The AEDPA imposes various requirements on all petitions for writ of habeas corpus filed after the date of its enactment.  Lindh v. Murphy, 521 U.S. 320 (1997); Jeffries v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997) (en banc), *cert. denied,* 118 S.Ct. 586 (1997).  The instant petition was filed on December 9, 2021, and thus, it is subject to the provisions of the AEDPA.

The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  In most cases, the limitations period begins running on the date that the petitioner's direct review became final.  In this case, the petition for review was denied on January 15, 1997.  (Doc. 27-4.)  Direct review concluded on April 15, 1997, when the ninety-day period for filing a petitioner for writ of certiorari to the Supreme Court expired.

4

Barefoot v. Estelle, 463 U.S. 880, 887 (1983). The statute of limitations commenced on the following day on April 16, 1997. Absent applicable tolling, the last day to file a federal habeas petition was April 15, 1998. Petitioner did not file his federal petition until December 9, 2021, which was over twenty-two years after the statute of limitations expired.

III.     Statutory Tolling of the Limitation Period Pursuant to 28 U.S.C. § 2244(d)(2)

Under the AEDPA, the statute of limitations is tolled during the time that a properly filed application for state post-conviction or other collateral review is pending in state court. 28 U.S.C. § 2244(d)(2). A properly filed application is one that complies with the applicable laws and rules governing filings, including the form of the application and time limitations. Artuz v. Bennett, 531 U.S. 4, 8 (2000). An application is pending during the time that 'a California petitioner completes a full round of [state] collateral review," so long as there is no unreasonable delay in the intervals between a lower court decision and the filing of a petition in a higher court. Delhomme v. Ramirez, 340 F. 3d 817, 819 (9th Cir. 2003), *abrogated on other grounds as recognized by* Waldrip v. Hall, 548 F. 3d 729 (9th Cir. 2008) (*per curiam*); see Evans v. Chavis, 546 U.S. 189, 193-194 (2006); Carey v. Saffold, 536 U.S. 214, 220, 222-226 (2002); Nino v. Galaza, 183 F.3d 1003, 1006 (9th Cir. 1999).

In this case, Petitioner filed twenty-nine (29) habeas petitions in the state courts, as follows:

The First Action:
January 3, 2006: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-5);
January 5, 2006: Petition denied as untimely (Doc. 27-6);

The Second Action:
February 21, 2006: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-7);
March 8, 2006: Petition denied (Doc. 27-8);

The Third Action:
February 21, 2006: Motion for new trial filed in the Madera County Superior Court;
April 5, 2006: Motion denied;

The Fourth Action:
June 15, 2006: Petition for writ of habeas corpus filed in the California Court of Appeal (Doc. 27-9);
August 22, 2006: Petition denied (Doc. 27-10);

The Fifth Action:
October 13, 2006: Petition for writ of habeas corpus filed in the California Court of Appeal (Doc. 27-11);
February 3, 2009: Petition denied (Doc. 27-12);

<u>The Sixth Action</u>:
March 16, 2009: Petition for writ of habeas corpus filed in the California Supreme Court (Doc. 27-13);
August 12, 2009: Petition denied, citing <u>In re Robbins</u>, 18 Cal.4th 770, 780 (1998) (Doc. 27-14);

<u>The Seventh Action</u>:
January 25, 2010: Motion for new trial filed in the Madera County Superior Court;
February 22, 2010: Motion denied;

<u>The Eighth Action</u>:
August 5, 2013: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-15);
August 23, 2013: Petition denied as untimely (Doc. 27-16);

<u>The Ninth Action</u>:
September 9, 2014: Petition for writ of error coram nobis filed in the California Court of Appeal (Doc. 27-17);
September 18, 2014: Petition denied (Doc. 27-18);

<u>The Tenth Action</u>:
August 29, 2016: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-19);
September 7, 2016: Petition denied as untimely (Doc. 27-20);

<u>The Eleventh Action</u>:
August 31, 2016: Motion for new trial filed in the Madera County Superior Court;
October 11, 2016: Motion denied;

<u>The Twelfth Action</u>:
October 24, 2016: Petition for writ of habeas corpus filed in the California Court of Appeal (Doc. 27-21);
January 6, 2017: Petition denied (Doc. 27-22);

<u>The Thirteenth Action</u>:
October 4, 2019: Petition for resentencing filed in the Madera County Superior Court (Doc. 27-23);
September 25, 2020: Petition denied (Doc. 27-24);

<u>The Fourteenth Action</u>:
October 13, 2020: Petition for writ of habeas corpus filed in the California Court of Appeal (Doc. 27-25);
June 29, 2021: Petition denied (Doc. 27-26);

<u>The Fifteenth Action</u>:
March 22, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-27);
April 19, 2021: Petition denied (Doc. 27-28);

<u>The Sixteenth Action</u>:
July 12, 2021: Petition for writ of habeas corpus filed in the California Court of Appeal (Doc. 27-29);
September 9, 2021: Petition denied (Doc. 27-30);

The Seventeenth Action:
September 17, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-31);
December 20, 2021: Petition denied (Doc. 27-32);

The Eighteenth Action:
September 22, 2021: Petition for writ of habeas corpus filed in the California Supreme Court (Doc. 27-33);
November 23, 2021: Petition denied (Doc. 27-34);

The Nineteenth Action:
October 5, 2021: Petition for writ of habeas corpus filed in the California Court of Appeal (Doc. 27-35);
November 18, 2021: Petition denied (Doc. 27-36);

The Twentieth Action:
October 8, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-37);
December 20, 2021: Petition denied (Doc. 27-38);

The Twenty-First Action:
October 26, 2021: Petition for resentencing filed in the Madera County Superior Court (Doc. 27-39);
November 10, 2021: Petition denied (Doc. 27-40);

The Twenty-Second Action:
November 19, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-41);
November 29, 2021: Petition denied as untimely (Doc. 27-42);

The Twenty-Third Action:
November 19, 2021: Petition for writ of habeas corpus filed in the California Supreme Court (Doc. 27-43);
March 16, 2022: Petition denied (Doc. 27-44);

The Twenty-Fourth Action:
December 16, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-45);
January 7, 2022: Petition denied (Doc. 27-46);

The Twenty-Fifth Action:
December 27, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-47);
January 7, 2022: Petition denied (Doc. 27-46);

The Twenty-Sixth Action:
December 30, 2021: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-48);
February 20, 2022: Petition denied (Doc. 27-49);

The Twenty-Seventh Action:
January 10, 2022: Petition for writ of habeas corpus filed in the Madera County Superior Court (Doc. 27-50);
February 20, 2022: Petition denied (Doc. 27-51);

  The Twenty-Eighth Action:
January 25, 2022: Petition for resentencing filed in the Madera County Superior Court (Doc. 27-52), which is currently pending;

  The Twenty-Ninth Action:
March 1, 2022: Petition for resentencing filed in the Madera County Superior Court (Doc. 27-53), which is currently pending.

Petitioner is not entitled to statutory tolling for the time period between the finality of direct of review and the commencement of post-conviction collateral review. Nino v. Galaza, 183 F.3d 1003, 1006-07 (9th Cir. 1999). By the time Petitioner filed his first petition on January 3, 2006, the limitations period had already expired by over 7 years. The filing of the first state habeas petition did not operate to restart the clock. Ferguson v. Palmateer, 321 F.3d 820, 823 (9th Cir. 2003.) Therefore, the federal petition is untimely.

IV. Later Start Date Under 28 U.S.C. § 2244(d)(1)(D)

Petitioner claims he has newly discovered evidence in the form of recantations from several witnesses. He claims that in 2005, he discovered that his co-defendant, Tony Leavy, confessed to police that he had committed the murder and explained where he had obtained the gun used in the murder. (Doc. 25 at 1.) He alleges the prosecution suppressed the evidence. Petitioner also claims that witness Leticia Jones testified falsely in his trial and later recanted. (Doc. 23 at 2.) Petitioner refers to Jones' testimony in his co-defendant's case and points out various inconsistencies and contrary statements. (Doc. 1 at 2-5.) He contends that Jones recanted her testimony to three other women: Petitioner's appellate attorney Sandra S. Gillies; Jones' cousin Tecia Robinson Hall; and law student Estella Lynn Godsey. (Doc. 1 at 33.) He alleges he submitted affidavits from these individuals to the state courts on January 3, 2006. (Docs. 1 at 33; 25 at 1.)

Under § 2244(d)(1)(D), the one-year limitation period starts on the date when "the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence," Hasan v. Galaza, 254 F.3d 1150, 1154, fn. 3 (9th Cir. 2001) (quoting Owens v. Boyd, 235 F.3d 356, 359 (7th Cir. 2000)), not when the factual predicate was actually discovered by Petitioner and not when Petitioner understands the legal theories available to him or the legal significance of the facts that he discovers. Due diligence does not require "the maximum feasible diligence," but it does

require reasonable diligence in the circumstances.  Schlueter v. Varner, 384 F.3d 69, 74 (3d Cir. 2004) (quoting Moore v. Knight, 368 F.3d 936, 940 (7th Cir. 2004)).

Here, the basis for Petitioner's actual innocence claim is evidence in the form of contradictory statements made by witness Leticia Jones at Petitioner's co-defendant's trial and alleged recantation statements made by Jones and those who heard her subsequent statements.  Concerning witness Jones' testimony at Petitioner's co-defendant's trial, that evidence was readily available and discoverable well before 2005 when Petitioner states he discovered it.  Petitioner presented his claims based on this newly-discovered evidence to the Madera County Superior Court on January 3, 2006. (Doc. 27-5.) The Madera County Superior Court denied the petition as untimely, specifically finding: "[Petitioner] did not show that his delay of 11 years was justified by the recent discovery of new legal or factual bases in support of his claim, or that his claim falls within an exception to the timeliness bar. {In re Clark (1993) 5 Cal.4th 750}."  (Doc. 27-6 at 1.)  Given that the contradictory statements occurred and were recorded in Petitioner's co-defendant's trial, and were thus readily discoverable, Petitioner could have discovered this evidence through due diligence in the 9 years after direct review concluded. Hasan, 254 F.3d at 1154 fn. 3.  Petitioner is thus not entitled to a later start date under 28 U.S.C. § 2244(d)(1)(D).

V.     Equitable Tolling

The running of the one-year limitation period under 28 U.S.C. § 2244(d) is subject to equitable tolling in appropriate cases. See Holland v. Florida, 560 U.S. 631, 651-652 (2010); Calderon v. United States Dist. Ct., 128 F.3d 1283, 1289 (9th Cir. 1997).  Equitable tolling may be granted when "extraordinary circumstances beyond a prisoner's control make it impossible to file the petition on time." Shannon v. Newland, 410 F. 3d 1083, 1089-1090 (9th Cir. 2005) (internal quotation marks and citations omitted).  "When external forces, rather than a petitioner's lack of diligence, account for the failure to file a timely claim, equitable tolling of the statute of limitations may be appropriate." Miles v. Prunty, 187 F.3d 1104, 1107 (9th Cir. 1999).  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way."   Holland, 560 U.S. at 651-652; Pace v. DiGuglielmo, 544 U.S. 408, 418 (2005). "[T]he threshold necessary to trigger equitable tolling under

1  AEDPA is very high, lest the exceptions swallow the rule." Miranda v. Castro, 292 F. 3d 1062, 1066

2  (9th Cir. 2002) (citation omitted).  As a consequence, "equitable tolling is unavailable in most cases."

3  Miles, 187 F. 3d at 1107.

4  Petitioner contends he is a layman at law.  However, ignorance of the law and the lack of legal

5  experience typically do not excuse an untimely filing, even for a *pro se* incarcerated prisoner.

6  Shoemate v. Norris, 390 F.3d 595, 598 (8th Cir. 2004) (petitioner's misunderstanding of proper

7  procedures under state law for filing a certain motion did not warrant equitable tolling); Marsh v.

8  Soares, 223 F.3d 1217, 1220 (10th Cir. 2000) (ignorance of the law, including existence of AEDPA,

9  insufficient to warrant tolling); Felder v. Johnson, 204 F.3d 168, 171–72 (5th Cir. 2000) (petitioner's

10 unawareness of AEDPA's filing requirements insufficient to warrant equitable tolling); Turner v.

11 Johnson, 177 F.3d 390, 391 (5th Cir. 1999) (petitioner's unfamiliarity with the legal process does not

12 merit equitable tolling; his unfamiliarity due to illiteracy or any other reason is irrelevant); Miller v.

13 Marr, 141 F.3d 976, 978 (10th Cir. 1998) (equitable tolling not justified by the fact that petitioner

14 simply did not know about AEDPA time limitation); see also Herrera v. Butler, 2004 WL 1729927

15 (N.D. Cal. 2004), *aff'd*, 184 Fed. Appx. 648 (9th Cir. 2006); Pearson v. North Carolina, 130 F. Supp.

16 2d 742, 744 (W.D. N.C. 2001); Rhodes v. Senkowski, 82 F. Supp. 2d 160, 172 n.7 (S.D. N.Y. 2000);

17 Eisermann v. Penarosa, 33 F. Supp. 2d 1269, 1273 (D. Haw. 1999); cf. Kibler v. Walters, 220 F.3d

18 1151, 1153 (9th Cir. 2000) (lack of knowledge with state law not "cause" to relieve procedural

19 default).  The relevant time is not when Petitioner actually discovered his claims, but when he could

20 have discovered them through the exercise of due diligence.  Petitioner fails to show he exercised due

21 diligence or that there were extraordinary circumstances which prevented him from timely filing his

22 petition.

23 VI.     Actual Innocence

24 Petitioner contends he is actually innocent; therefore, the untimeliness of the petition should be

25 excused.  He claims that Leticia Jones recanted her testimony that Petitioner had sole possession of the

26 gun and that she overheard him say "we shot the motherfuckers."  He further contends his co-

27 defendant Tony Leavy testified that he obtained the gun that he used to shoot the victims, and that this

28 proves Petitioner's innocence.

The Supreme Court has held that actual innocence can constitute an equitable exception to AEDPA's statute of limitations, however, "tenable actual-innocence gateway pleas are rare . . . ." McQuiggin v. Perkins, 569 U.S. 383, 386 (2013); see also House v. Bell, 547 U.S. 518, 538 (2006) (emphasizing that the Schlup standard is "demanding" and seldom met). The Supreme Court stated that "a petitioner does not meet the threshold requirement unless he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." Schlup v. Delo, 513, U.S. 298, 329 (1995). "To be credible, such a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Id. at 324. Petitioner fails to meet this demanding standard.

First, as noted by Respondent, Petitioner provides no evidence in support of his claims such as affidavits or documentation from any of the witnesses. This alone is fatal to his claim. Second, even if he had provided an affidavit from Leticia Jones recanting her testimony, such evidence would be viewed with great suspicion. Dobbert v. Wainwright, 468 U.S. 1231, 1233-34 (1984). Moreover, the strong evidence of Petitioner's guilt as wells as credibility issues involving Petitioner's accomplices weighed heavily against his claim of innocence.

As Petitioner readily admits, Leticia Jones gave approximately nine different accounts according to the police reports. (Doc. 29 at 7.) Another changed version of events from Jones can hardly be considered reliable evidence. And because the evidence is unreliable, testimony from those witnesses who allegedly heard this new version of events from Jones are also unreliable. Even assuming the truth of her changed testimony, Petitioner does not and cannot satisfy the actual innocence standard of Schlup.

In Jackson v. Calderon, 211 F.3d 1148 (9th Cir. 2000), the Ninth Circuit rejected a claim of actual innocence that was based on new scientific evidence. The petitioner had presented new expert medical testimony that showed, to a 95 percent medical certainty, that the petitioner could not have had the requisite premeditation and specific intent to kill since he was intoxicated with PCP at the time of the murder. Id. at 1165. The Ninth Circuit noted that this evidence cast doubt on the petitioner's

guilt, but it was insufficient to warrant relief since another doctor testified that the petitioner's level of intoxication would not necessarily render him unable to process thought, premeditate, deliberate, and intend to kill. Id.

In Carriger v. Stewart, 132 F.3d 463 (9th Cir. 1997), the Ninth Circuit rejected a claim of actual innocence despite another suspect having reliably confessed to the murder. The Ninth Circuit noted that the confessing suspect described details of the crime that only a participant would have known and boasted that the petitioner had been set up. Id. at 478-79. All other evidence also pointed as much to the new suspect as to the petitioner. Id. The Ninth Circuit noted that the evidence the petitioner presented "cast[ed] a vast shadow of doubt over the reliability of his conviction, [but] nearly all of it serve[d] only to undercut the evidence presented at trial, not affirmatively to prove [the petitioner's] innocence." Id. at 477. The Ninth Circuit denied the claim since the petitioner had presented no evidence showing he was elsewhere at the time of the crime, or evidence that would preclude any possibility of his guilt. Id. at 477.

Here, the evidence at issue fails to establish Petitioner's innocence. The trial evidence established that Petitioner carried a knife, whereas his co-perpetrator Tony Leavy was armed with a gun. Thus, evidence from Leticia Jones that Petitioner did not have possession of a gun would not have made any difference, nor would the statement "We got the mother fuckers," had it been attributed to Leavy instead of Petitioner. Moreover, Petitioner was found guilty of murder and attempted murder as an aider and abettor. (Doc. 27-2 at 6.) Petitioner does not question the jury's determination that he was involved in and aided and abetted in the predicate crime of robbery. (Doc. 27-2 at 7.) Insofar as murder was reasonably foreseeable and a natural and probable consequence of the attempted robbery, Petitioner was liable as an aider and abettor. (Doc. 27-2 at 7.) The evidence Petitioner points to could not have had any impact on the jury's finding.

In considering the alleged recantation testimony along with the evidence noted above, the Court finds that Petitioner fails to make a *prima facie* showing that he is probably innocent. Petitioner does not cast doubt on his guilt or show that "it is more likely than not that no reasonable juror would have found [him] guilty beyond a reasonable doubt.'" House v. Bell, 547 U.S. 518, 537 (2006).

In sum, Petitioner fails to demonstrate that any extraordinary circumstance stood in his way of timely filing his federal petition, he fails to show that he acted diligently, and he fails to demonstrate actual innocence. The Court finds that the federal petition should be dismissed as untimely.

**RECOMMENDATION**

For the foregoing reasons, the Court HEREBY RECOMMENDS that Respondent's motion to dismiss be GRANTED and the habeas corpus petition be DISMISSED WITH PREJUDICE for Petitioner's failure to comply with 28 U.S.C. § 2244(d)'s one-year limitations period.

This Findings and Recommendation is submitted to the United States District Court Judge assigned to this case, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." Replies to the objections shall be served and filed within ten (10) court days (plus three days if served by mail) after service of the objections. The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **September 26, 2022**          /s/ *Sheila K. Oberto*
                                       UNITED STATES MAGISTRATE JUDGE